```
              UNITED STATES BANKRUPTCY COURT
             MIDDLE DISTRICT OF NORTH CAROLINA
                     GREENSBORO DIVISION

IN RE:                            )
                                  )
EBW LASER, INC.,                  )   CASE NO. 05-10220
                                  )
         Debtor.                  )
                                  )
```

## MEMORANDUM OPINION

This case came before the Court on October 4, 2005, for hearing on the application of Douglas A. Harris for $100,000 in compensation as special counsel to the Debtor, EBW Laser, Inc. ("EBW Laser"). Alcon Laboratories, Inc., and RefractiveHorizons, LP (collectively "Alcon"), unsecured creditors of the estate, together with the Chapter 7 trustee ("Trustee"), object to Mr. Harris's fee application on the basis that no compensation is owed to him under the terms of his contingency fee contract, that he is not entitled to an administrative claim against the estate, and that any award of fees should be denied based on inadequate employment disclosures. For the reasons stated herein, the Court will sustain the objections in part and allow Mr. Harris a $27,000 Chapter 11 administrative expense claim against the estate.

## BACKGROUND

Before it entered bankruptcy, EBW Laser contracted with Alcon to purchase LADARVision laser machines for the purpose of reselling them or leasing them to banks and ophthalmologists. Disagreements ensued concerning the performance of the laser machines, resulting

-1-

in two separate lawsuits between EBW Laser and Alcon: EBW Laser sued Alcon in the Federal District Court for the Middle District of North Carolina, and Alcon sued EBW Laser in a Texas State court. Mr. Harris represented EBW Laser in both lawsuits.[1]

The litigation between the parties had been ongoing for about two years when EBW Laser filed its Chapter 11 bankruptcy on January 24, 2005. Four days later, on January 28, 2005, EBW Laser filed an application in the bankruptcy court to employ Mr. Harris as its special counsel so that Mr. Harris could continue his representation of it. The application sought to employ Mr. Harris on a contingency fee basis, plus reimbursement of expenses. While that motion plainly stated that Mr. Harris did not have any interest adverse to that of the estate, the motion indicated that Mr. Harris had been employed under a pre-petition contingency fee contract and that he was owed $1,514 in unpaid expenses as of the petition date. The Court approved EBW Laser's application to employ Mr. Harris on February 8, 2005.

Subsequently, EBW Laser consented to a motion filed by Alcon to convert its case to Chapter 7, and the Court entered the order of conversion on March 31, 2005. Charles M. Ivey, III, was

---

[1] Mr. Harris was also involved on behalf of EBW Laser in two other pre-petition lawsuits. One was filed against EBW Laser by Sheri Rowen, M.D., Rowen Ophthalmology, and EBW Laser of Baltimore, LLC, in the United State District Court for the Middle District of North Carolina. In the second, EBW Laser was sued by GE Healthcare Financial Services in the United States District Court for the Middle District of North Carolina. In both of those cases, EBW Laser asserted claims against Alcon.

appointed as the Trustee.

After reviewing the litigation between Alcon and EBW Laser, the Trustee, acting as his own attorney and with the assistance of attorneys from his law firm, negotiated a settlement with Alcon in which the Trustee agreed to "sell" the Debtor's four LADARVision laser machines back to Alcon, agreed to a consent judgement in the Texas lawsuit in favor of Alcon for $2,000,000 and agreed to release and dismiss the pending claims against Alcon in exchange for a $300,000 payment from Alcon.  The Court approved the settlement on June 6, 2005.

Meanwhile, on May 25, 2005, Mr. Harris submitted his application for $100,000 in compensation from the estate based upon the Trustee's settlement of the litigation with Alcon.  Mr. Harris did not negotiate the settlement with Alcon on behalf of the Trustee.  Mr. Harris alleges, however, that EBW Laser had the unencumbered laser machines to sell to Alcon solely as a result of his pre-petition efforts and that the ongoing litigation which he was handling enabled the Trustee to reach a favorable settlement with Alcon.  Mr. Harris also alleges that he struck an undisclosed, pre-petition agreement with Mark McDaniel, president of EBW Laser, the effect of which was to deem any purported sale of the laser machines freed-up by Mr. Harris's efforts to be a litigation settlement triggering payment on his contingency fee contract.  Mr. Harris testified that this agreement was necessary to protect his

contingency fee because he believed that Alcon had settled similar lawsuits by structuring the settlement as a purchase of the laser machines.

## ANALYSIS

### A. No Contingent Fee Was Earned by Mr. Harris

Mr. Harris first argues that he is entitled to a cost of administration allowance of $100,000 pursuant to his post-petition contingent fee agreement with EBW Laser. This argument is not accepted. Pursuant to section 1107 of the Bankruptcy Code, EBW Laser, as a debtor in possession, had all of the rights of a trustee, including the right to pursue the claims against Alcon and the right to employ special counsel under section 327(e) in order to do so. However, once this case was converted to one under chapter 7, only the Trustee had the authority to employ special counsel pursuant to section 327(e) to pursue the claims against Alcon. The Trustee could have applied for authority to employ Mr. Harris as special counsel in the chapter 7 case, but chose not to do so. Instead, the Trustee, pursuant to authority granted by the court, utilized his own services and the services of members of his firm to administer and ultimately settle the claims against Alcon. In order to earn a contingent fee under his employment by EBW Laser, Mr. Harris was required to produce a recovery through either a successful trial or a settlement. Since neither of these contingencies was accomplished by Mr. Harris before the Trustee

assumed control of the Alcon litigation, no contingent fee was earned by Mr. Harris during the chapter 11 case. Likewise, because the Trustee never entered into a contingent fee agreement nor otherwise employed Mr. Harris as special counsel, no contingent fee was earned by Mr. Harris during the chapter 7 case. Nor is Mr. Harris entitled to be paid on an hourly basis for the time that he contends he spent after the case was converted to Chapter 7 informing the Trustee and the Trustee's attorneys about the litigation with Alcon. Employment by the Trustee would necessitate a separate order by the Court. See 11 U.S.C. § 327(e) (requiring court approval before a Trustee can hire special counsel). Unapproved representation – even when expressly agreed to by the parties – generally is not compensable by the bankruptcy estate. E.g., In re Milwaukee Engraving Co., 219 F.3d 635, 636-37 (7th Cir. 2000) (denying fees incurred by attorneys when the services rendered occurred before the court had the opportunity to review, and deny, the attorneys' application for employment), cert. denied 531 U.S. 1112 (2001). Although a court may approve the retention of counsel nunc pro tunc under certain circumstances, no motion for nunc pro tunc approval of employment has been filed by the Trustee. It follows that Mr. Harris is not entitled to compensation for any services that may have been performed after this case was converted to Chapter 7.

The next question to be considered is whether Mr. Harris is

entitled to compensation for services performed during the post-petition/pre-conversion period pursuant to his post-petition contingent fee agreement with the debtor in possession. If he is not entitled to a contingent fee, is he entitled to compensation on any other theory? The answer to this question is in the affirmative.

      B.   <u>Compensation for Services Performed During The Chapter 11 Case</u>

Where, as in the present case, an attorney with a contingency fee contract is terminated before the lawsuit is reduced to a settlement or judgment, the discharged attorney is entitled to a quantum meruit distribution from the proceeds of the lawsuit. <u>E.g.</u>, <u>Covington v. Rhodes</u>, 247 S.E.2d 305, 309 (N.C. 1978) ("A contract for legal services is not like other contracts. The client has the right to discharge his attorney at any time, and it is our view that upon such discharge the attorney is entitled to recover the reasonable value of the services he has already provided."); <u>Pritchett & Burch, PLLC v. Boyd</u>, 609 S.E.2d 439, 443 (N.C. Ct. App. 2005) ("In contingency fee contracts between an attorney and client, once the client discharges the attorney, quantum meruit permits a claim for and an award of attorney's fees and costs."); <u>Guess v. Parrott</u>, 585 S.E.2d 464, 468 (N.C. Ct. App. 2003) ("[A] claim by an attorney who has provided legal service pursuant to a contingency fee agreement and then fired has a viable claim in North Carolina in quantum meruit against the former client or its

subsequent representative."). Before a discharged attorney may recover in quantum meruit based on a contingency fee contract, however, there must first be a successful occurrence of the contingency after the attorney is discharged, or else nothing may be recovered. Pritchett & Burch, PLLC, 609 S.E.2d at 444 ("'In contingency fee cases, the cause of action for quantum meruit arises only upon the successful occurrence of the contingency. If the client fails in his recovery, the discharged attorney will similarly fail and recover nothing.'") (citation omitted).

The court is satisfied that a successful occurrence of the contingency occurred after this case was converted from Chapter 11 to Chapter 7 and Mr. Harris, in effect, was discharged. Although the Trustee's settlement was structured as a $300,000 purchase of the laser machines, the record establishes that in reality the settlement was one in which a portion of the consideration was paid by Alcon in exchange for the settlement and dismissal of the claims that had been handled by Mr. Harris before his involvement was terminated, and for the release of such claims which was executed by the Trustee as an integral part of the settlement. Accordingly, Mr. Harris is entitled to a claim in quantum meruit for the services that he did perform before his employment was terminated. The value of those services is a "reasonable value."[2] E.g., Guess,

---

[2] The "reasonable value" of the services rendered cannot be more than the total contingency fee that the client had originally agreed to pay on the successful occurrence of the contingency. Guess, 585 S.E.2d at 468 (stating that it would be unfair to

-7-

585 S.E.2d at 468 ("[A]n attorney may not recover on the contract but only the reasonable value of his services . . . .") (citing Covington, 247 S.E.2d at 307 ("What we perceive to be the modern trend, and, we believe, the better rule, is that an attorney discharged with or without cause can recover only the reasonable value of his services as of that date.")).

The guidelines for courts to follow when determining the reasonable value of a discharged attorney's services include: (1) the terms of the percentage agreement; (2) the nature of the litigation; (3) the difficulty or novelty of the case; (4) the time spent; (5) the amount of labor required; (6) the skill required; (7) the attorney's skill, experience, standing, and responsibility in managing the case; (8) the adequacy of the representation; (9) any unusual difficulties; (10) the amount of money involved; (11) the results achieved; and (12) amounts customarily charged for similar services in the same locality. Guess, 585 S.E.2d at 471 ("We hold that the factors set forth above are proper guidelines for the trial courts to follow when determining the reasonable value of a discharged attorney's services. These determinations are reviewable upon appeal only for abuse of discretion.").

In determining the appropriate amount of quantum meruit compensation for Mr. Harris during the post-petition/pre-conversion

---

require the client "to pay attorney's fees in excess of the one-third contingency fee to which they had agreed.").

period, the Court finds that: (1) Mr. Harris's employment was on the basis of a one-third contingency fee on any recovery in the Alcon litigation; (2) the nature of the litigation concerned allegedly defective laser machines that EBW Laser purchased from Alcon; (3) the case was made more difficult than usual by parallel litigation in different states, the intervention of EBW Laser's bankruptcy filing, and by satellite litigation concerning third-party claims that EBW Laser had asserted against Alcon; (4) the time spent on the litigation in the post-petition/pre-conversion period was 118.1 hours; (5) Mr. Harris's representation was largely labor intensive inasmuch as it entailed sifting though numerous boxes of discovery and analyzing expert reports; (6) considerable legal skill was required for litigation that was rather complex and that spanned several forums and multiple cases, however, a large number of hours was spent doing "associate-type" work whereby Mr. Harris would perform basic legal research and review discovery documents; (7) Mr. Harris is an experienced litigator who had the primary role in managing the all of the litigation with Alcon; (8) Mr. Harris's representation of EBW Laser was adequate; (9) while the total amount sought by EBW Laser in the Texas litigation was $1,873,167.02, the Trustee settled all litigation for $300,000 and agreed to allow Alcon an unsecured claim against the estate for $2,000,000; and (10) there was inconsistency between Mr. Harris's testimony regarding his hourly rate when he charges by the hour and

the statement in his application that "this attorney customarily bills at $250.00 per hour when I am billing."  Taking all of the above factors into consideration, the Court finds that a reasonable fee for Mr. Harris's post-petition/pre-conversion services in quantum meruit is $30,000.

### C. Priority Status of Mr. Harris's Compensation

To be entitled to an administrative claim against the bankruptcy estate, Mr. Harris must qualify under 11 U.S.C. § 503(b).  Compensation and reimbursement awarded under Section 330(a) of the Bankruptcy Code is specifically listed as an administrative expense item. § 503(b)(2). In turn, Section 330(a) permits a court to award reasonable compensation for the actual and necessary services rendered by a professional. § 330(a). See, e.g., Ferrara & Hantman v. Alvarez (In re Engel), 124 F.3d 567, 569 (3d Cir. 1997) ("The question we must answer on this appeal is whether an appointment of special counsel under § 327(e) of the Bankruptcy Code requires that compensation for special counsel's services be paid from estate funds where no benefit to the bankruptcy estate has been achieved. We hold that § 330 of the Bankruptcy Code requires that services rendered by special counsel benefit the estate before payment from estate funds may be authorized."); cf. Stalnaker v. DLC, Ltd. (In re DLC, Ltd.), 376 F.3d 819, 825 (8th Cir. 2004) ("Compensation may be reasonable though the trustee's services do not benefit the estate."); In re

-10-

Ames Dep't Stores, 76 F.3d 66, 71 (2d Cir. 1996) ("With the 1994 amendments of section 330, Congress made another move towards greater equity in estate management. It provided that an award for fees might be made for services that were 'beneficial at the time at which the service was rendered,' and, by inverse construction, 'reasonably likely to benefit the debtor's estate.'"), overruled on other grounds, Lamie v. United States Tr., 540 U.S. 526 (2004).

Under the facts of this case, the Court is convinced that had the litigation against Alcon not been pending, Alcon would not have agreed to enter into the $300,000 settlement with the Trustee. Even assuming that the laser machines did have some residual value, the synergy created by the litigation was a precipitating factor of the settlement. While pre-petition services may have been involved in "freeing-up" the laser machines, Mr. Harris's litigation efforts in the post-petition/pre-conversion period kept the litigation alive and moving toward a trial and gave the Trustee leverage, which the Trustee used in reaching a settlement with Alcon which provided a significant benefit to the estate. Thus, Mr. Harris's services benefitted the estate and he is entitled to an administrative expense claim under sections 330(a) and 503(b)(2).

Although Mr. Harris is entitled to a Chapter 11 administrative expense claim, such claim is subordinated to the Chapter 7 administrative expenses. 11 U.S.C. § 726(b) ("[I]n a case that has been converted to this chapter under section 1112 . . . a claim

allowed under section 503(b) . . . after such conversion has priority over a claim allowed under section 503(b) . . . incurred . . . before such conversion . . . ."). Therefore, all of the Chapter 7 administrative expenses must be paid before Mr. Harris will be entitled to receive his compensation.

### D. Inadequate Disclosure by Mr. Harris

Alcon and the Trustee argue that Mr. Harris lost any entitlement to an administrative expense claim against the estate due to his failure to disclose a pre-petition fee agreement that he entered with EBW Laser's president before EBW Laser filed its bankruptcy. The agreement in question was first disclosed in Mr. Harris's fee application, which states:

> At the time that the machines were freed in the Fall of 2004 by the actions of this attorney, it was recognized by Mark McDaniel, President of EBW Laser, Inc., and this attorney that while the machines were an asset and would eventually be worth money when sold that they did not lend themselves to a division into an attorney's fee without first being sold. Therefore, on September 27, 2004, this attorney and EBW Laser, Inc., executed an agreement to defer compensation until such time as the machines were sold. Inasmuch as that is now occurring, that contract is now due and payable and meets the terms of this Applicants appointment as Special Counsel.

(Document No. 138, p.2).

Mr. Harris thus claims that he is entitled to compensation as a result of having freed-up the laser machines in the Fall of 2004; consequently, at the time of the bankruptcy, he had an undisclosed claim against the estate based on the undisclosed side agreement

described in his application.

Notwithstanding the fact that a claim for pre-petition fees will not, as a general matter, disqualify special counsel under Section 327(e)[3], Alcon and the Trustee argue that the fact that Mr. Harris did not disclose the side agreement and the claim based on the side agreement in his application for employment should disqualify him from receiving any fees in this case.

Rule 2014 requires that an application for employment state "[1] the specific facts showing the necessity for the employment, [2] the name of the person to be employed, [3] the reasons for the

---

[3] See Bank of Brussels Lambert v. Coan (In re AroChem Corp.), 176 F.3d 610, 622 (2nd Cir. 1999) ("'[W]here the trustee seeks to appoint counsel only as 'special counsel' for a specific matter, there need only be no conflict between the trustee and counsel's creditor client with respect to the specific matter itself.'") (citation omitted). An entitlement to pre-petition attorney's fees, which renders the special counsel a creditor of the estate, is not a sufficient basis for disqualifying counsel under Section 327(e). E.g., In re Henlar, Ltd., 1997 U.S. Dist. LEXIS 134 at *2, 10-11 (E.D. La. Jan. 6, 1997) (holding that special counsel became a creditor of the estate once he signed a contract to represent Henlar Ltd., and that status was not sufficient to disqualify special counsel because there was no conflict of interest in the special matter for which the special counsel was employed); Buckley v. TransAmerica Inv. Corp. (In re Southern Kitchens), 216 B.R. 819, 826 n.11 (Bankr. D. Minn. 1998) ("[T]he large unsatisfied claim that F&W holds, for attorney fees incurred during the Debtor's Chapter 11 case, prevents from it being a "disinterested person." This is of no real moment, as the Plaintiff did not hire F&W to handle legal matters generally for the estate [but only hired F&W as special counsel under § 327(e)]."); DeVlieg-Bullard, Inc. v. Natale (In re DeVlieg, Inc.), 174 B.R. 497, 503 (Bankr. N.D. Ill. 1994) ("[S]ection 327(e) does not require that counsel be a 'disinterested person,' as section 327(a) does, permitting counsel to have claims for prior fees."), appeal dismissed, 56 F.3d 32 (7th Cir 1995).

selection, [4] the professional services to be rendered, and [5] the proposed arrangement for compensation, and, [6] to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest . . . ." Fed. R. Bankr. P. 2014.  "The Bankruptcy Court may, in its discretion, disqualify counsel, or deny compensation, as a sanction for failure to make the disclosure required by Rule 2014(a)." Southern Kitchens, 216 B.R. at 830.

    The employment application for Mr. Harris and his supporting affidavit largely met the requirements of Rule 2014.  The application for employment included [1] facts showing the on-going and complex nature of the litigation with Alcon, [2] that Mr. Harris was to be employed by the estate, [3] because he had previously represented the debtor in the litigation with Alcon, and [4] the scope of his representation would be to continuing the on-going litigation.  The proposed arrangement for compensation [5] was also set forth inasmuch as Mr. Harris was representing EBW Laser on a contingency fee basis.  Finally, other than representing the Debtor in the litigation with Alcon, [6] Mr. Harris stated that he had no other connections with the debtor, creditors, or other parties in interest.  Regarding pre-petition obligations to him, his affidavit indicated that he was owed only $1,514 for expenses.  No mention was made of any side agreement or any agreement regarding the laser machines.  In failing to disclose the side

agreement under which he has claimed that he is entitled to a fee based upon having freed up the laser machines, the affidavit was misleadingly incomplete and by indicating that his only pre-petition claim against EBW Laser was $1,514 for incurred expenses, the affidavit was inaccurate and untrue.  As a sanction for this failure to comply with Rule 2014 and the filing of the incomplete and inaccurate affidavit, the court will reduce the compensation to be awarded to Mr. Harris by the sum of $3,000.  See In re Al Gelato Continental Desserts, Inc., 99 B.R. 404, 409 (Bankr. N.D. Ill. 1989) (imposing a 10% sanction for failing to make disclosures in a Rule 2014 application when there appeared to be no attempt to hide the facts).

## CONCLUSION

The Court will allow Mr. Harris a Chapter 11 administrative expense claim of $27,000.  A separate order so providing will be entered contemporaneously herewith pursuant to Fed. R. Bankr. P. 9021.

Parties to be Served

Charles M. Ivey, III, Trustee
P.O. Box 3324
Greensboro, NC 27402

Rayford K. Adams, Esq.
P.O. Box 20570
Greensboro, NC 27420

Douglas S. Harris
218 West Market Street
Greensboro, NC 27401